# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Dennis N. Lambries, Respondent,

v.

Saluda County Council; T. Hardee Horne, Chairman;
William "Billie" Pugh, Councilman; Steve Teer,
Councilman; Jacob Schumpert, Councilman; and James
Frank Daniel, Sr., Councilman; Petitioners.

Appellate Case No. 2012-212790

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Saluda County
The Honorable William P. Keesley, Circuit Court Judge

---

Opinion No. 27400
Heard May 7, 2014 – Filed June 18, 2014

---

## REVERSED

---

Christian G. Spradley, of Moore, Taylor & Thomas, P.A.,
of Saluda, and Katherine Carruth Goode, of Winnsboro,
for Petitioners.

Richard R. Gleissner, of Gleissner Law Firm, LLC, of
Columbia, for Respondent.

Robert E. Lyon, Jr., John K. DeLoache, and Alexander White Smith, all of Columbia, for Amicus Curiae South Carolina Association of Counties.

Danny C. Crowe, of Crowe LaFave, L.L.C., of Columbia, for Amicus Curiae the Municipal Association of South Carolina.

---

**ACTING JUSTICE JAMES E. MOORE:**  This Court granted a petition for a writ of certiorari to review *Lambries v. Saluda County Council*, 398 S.C. 501, 728 S.E.2d 488 (Ct. App. 2012), in which the Court of Appeals held, in a matter of first impression, that Saluda County Council's practice of amending its agenda during regularly scheduled meetings violated S.C. Code Ann. § 30-4-80 (2007), the notice provision in South Carolina's Freedom of Information Act (FOIA).  We reverse.

## I.  FACTS

On December 8, 2008, at a regularly scheduled meeting of the Saluda County Council, a motion was made and seconded to amend the posted agenda to take up a resolution.  Both the motion and the resolution were voted upon and passed unanimously during the meeting, which was open to the public.  The nonbinding resolution pertained to water and sewer services, although that subject was not originally listed on County Council's agenda.

Dennis N. Lambries ("Lambries") filed this action in the circuit court against the Saluda County Council and its members (collectively, "County Council"), alleging County Council's amendment of the agenda without notice and in the absence of exigent circumstances and its passage of a resolution that was not on the posted agenda violated FOIA's notice provision in section 30-4-80.  Lambries brought the action as a citizen of Saluda County and noted he was also the Chairman of the Saluda County Water and Sewer Authority.

Lambries sought declaratory and/or injunctive relief.  Specifically, Lambries asked the circuit court to declare that all resolutions, acts, ordinances, and statements made by County Council in violation of FOIA were null and void, and he sought injunctive relief to prevent future amendments of an agenda in the absence of "truly exigent circumstances," adopting the language contained in a

1984 South Carolina Attorney General Opinion.[1]  Lambries contended the only exception in section 30-4-80 to the requirement that a public notice include an agenda, date, time, and place of meeting was for emergency meetings.

Lambries ultimately dropped his request that certain acts of County Council be declared void and sought only an interpretation of FOIA's notice provision that would prevent County Council from amending its agenda during regularly scheduled meetings.  The circuit court denied Lambries's request for injunctive relief and found that under the clear terms of section 30-4-80, which referred to the publication of an "agenda, if any," an agenda was not even required for regularly scheduled meetings, and FOIA contained no prohibition on the amendment of a published agenda.  The circuit court rejected Lambries's argument that a sentence in section 30-4-80 states that an agenda is required, finding it applied only to "called, special, or rescheduled meetings," not to "regularly scheduled meetings."

The circuit court noted the purpose of FOIA is for the activities of government "to be in open session and not behind closed doors."  The court found that "the amendment of the agenda was performed in open session and in accordance with Saluda County Council rules of order as codified in their ordinances," and S.C. Code Ann. § 4-9-110 (1986) authorizes counties to establish their own rules and order of business.  The circuit court denied Lambries's motion to alter or amend under Rule 59(e), SCRCP, reiterating that it "d[id] not agree with the plaintiff's fundamental position that a county council cannot amend agendas for regularly scheduled meetings without advance notice or exigent circumstances."

The Court of Appeals reversed in a split decision, the majority finding (1) an agenda is required for regularly scheduled meetings, and (2) County Council's amendment of an agenda less than twenty-four hours before the meeting violated the "spirit" and "purpose" of FOIA's notice requirement. *Lambries v. Saluda County Council*, 398 S.C. 501, 728 S.E.2d 488 (Ct. App. 2012) (2-1 decision).

---

[1]  Op. No. 84-20, 1984 Op. S.C. Att'y Gen. 56, 1984 WL 159828.  Lambries mischaracterizes the Attorney General's opinion as stating agendas are *required* for regularly scheduled meetings.  However, the Attorney General actually stated that agendas are posted for regularly scheduled meetings "if there is an agenda[.]" *Id.* at *2.  Moreover, the language referenced by Lambries, wherein the Attorney General "advise[d] that in the absence of truly exigent circumstances, [FOIA] requires a public body to give notice in the manner prescribed," was made in the context of stating FOIA's notice requirements did not apply to emergency meetings. *Id.* at *4.

This Court granted County Council's petition for a writ of certiorari.  In addition, the Court has accepted briefs in support of County Council from the amici curiae, the Municipal Association of South Carolina and the South Carolina Association of Counties.

## II.  STANDARD OF REVIEW

As an initial matter, County Council contends "the Court of Appeals applied the wrong standard of review" when it found it could decide the issue presented in this case "with no particular deference to the circuit court."  County Council contends the matter should be reviewed under an abuse of discretion standard, as indicated by the dissent.[2]

"Actions for injunctive relief are equitable in nature."  *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010).  "An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff."  *Id.* at 140-41, 691 S.E.2d at 470 (citation omitted).

"An order granting or denying an injunction is reviewed for [an] abuse of discretion."  *Strategic Res. Co. v. BCS Life Ins. Co.*, 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006).  "An abuse of discretion occurs when the trial court's decision is *based upon an error of law* or upon factual findings that are without evidentiary support."  *Fields v. J. Haynes Waters Builders, Inc.*, 376 S.C. 545, 555, 658 S.E.2d 80, 85-86 (2008) (emphasis added).

"Upon review of an action in equity, this Court may make factual findings based on its own view of the preponderance of the evidence."  *Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc.*, 361 S.C. 117, 120-21, 603 S.E.2d 905, 907 (2004).  "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo."  *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).  "In a case raising a novel issue of law regarding the interpretation of a statute, the appellate court is free to decide the question with no particular deference to the lower court."  *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 466, 636 S.E.2d 598, 605 (2006).  "The appellate court is free to decide the question based on its assessment of which interpretation and reasoning would best comport with the law and public

---

[2]  The dissenting judge found, as an alternative basis for affirming, that the issuance of an injunction is within the trial court's discretion. *Lambries*, 398 S.C. at 507-08, 728 S.E.2d at 492 (Pieper, J., dissenting).

policies of this state and the Court's sense of law, justice, and right."  *Id.* at 467, 636 S.E.2d at 605-06.

We find that, while an injunction is equitable and subject to the trial court's discretion, where the decision turns on statutory interpretation—here, an interpretation of section 30-4-80 in FOIA—this presents a question of law.  As a result, this Court need not give deference to the trial court's interpretation.  If, based on this Court's assessment, the trial court committed an error of law in its interpretation of FOIA's notice requirement, that would constitute an abuse of discretion by the trial court.

### III.  LAW/ANALYSIS

On appeal, County Council contends the Court of Appeals erred in interpreting FOIA as prohibiting a public body from amending its agenda at a regularly scheduled meeting.  In analyzing this issue, it will be helpful to consider the relevant FOIA provisions, the applicable principles of statutory interpretation, and the reasoning of the Court of Appeals before turning to the propriety of County Council's conduct.

### A.  *Overview of FOIA Provisions*

There is no common-law right to attend the meetings of government bodies, so many jurisdictions have legislated public meeting statutes, variously referred to as, *inter alia*, "open meeting laws" or "Sunshine Acts."  *See generally* 4 Eugene McQuillin, *The Law of Municipal Corporations* § 13:10 (3d ed. rev. vol. 2011); 2 Am. Jur. 2d *Administrative Law* § 84 (2004).

In South Carolina, FOIA governs the public disclosure of the activities of public bodies, and it has provisions pertaining to public meetings as well as documents.  S.C. Code Ann. §§ 30-4-10 to -165 (2007 & Supp. 2013).  The essential purpose of FOIA is to protect the public from secret government activity.  *Wiedemann v. Town of Hilton Head Island*, 330 S.C. 532, 500 S.E.2d 783 (1998).

In declaring FOIA's purpose, the General Assembly has found "that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy."  S.C. Code Ann. § 30-4-15 (2007).  "Toward this end, [FOIA's] provisions . . . must be construed so as to make it possible for citizens, or their representatives,

to learn and report fully the activities of their public officials at a minimum cost or delay to the persons seeking access to public documents or meetings." *Id.*

FOIA's open meeting provision, section 30-4-60, provides "[e]very meeting of all public bodies shall be open to the public unless closed pursuant to [section] 30-4-70 of this chapter." *Id.* § 30-4-60. Meetings may be closed for certain enumerated reasons, including such matters as the discussion of proposed contractual arrangements and the proposed sale or purchase of property; the receipt of legal advice related to a pending, threatened, or potential claim; and the discussion of the proposed location, expansion, or provision of services. *Id.* § 30-4-70.

FOIA's notice provision is set forth in section 30-4-80 and requires "written public notice" of the meetings of public bodies as follows:

> (a) All public bodies, except as provided in subsections (b) and (c) of this section, must give written public notice of their *regular meetings* at the beginning of each calendar year. The notice must include the dates, times, and places of such meetings. Agenda, *if any*, for *regularly scheduled meetings* must be posted on a bulletin board at the office or meeting place of the public body at least twenty-four hours prior to such meetings.
>
> All public bodies must post on such bulletin board public notice for any *called, special, or rescheduled meetings*. *Such notice* must be posted as early as is practical but not later than twenty-four hours before the meeting. *The notice* must include the agenda, date, time, and place of the meeting. *This requirement* does not apply to *emergency meetings* of public bodies.

*Id.* § 30-4-80(a) (emphasis added). The statutory language is set forth in one paragraph, but it is separated into two paragraphs here for readability.

"Written public notice must include but need not be limited to posting a copy of the notice at the principal office of the public body holding the meeting or, if no such office exists, at the building in which the meeting is to be held." *Id.* § 30-4-80(d).

Any citizen of this state may apply to the circuit court for either or both a declaratory judgment and injunctive relief to enforce the provisions of FOIA no later than one year following the date on which the alleged violation occurs or one

year after a public vote in public session, whichever occurs later. *Id.* § 30-4-100(a). The court may award attorney's fees and other litigation costs to a prevailing plaintiff. *Id.* § 30-4-100(b). Any person or group willfully violating FOIA shall be deemed guilty of a misdemeanor. *Id.* § 30-4-110.

### B. *Principles of Statutory Interpretation*

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). "The determination of legislative intent is a matter of law." *Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue,* 388 S.C. 138, 148, 694 S.E.2d 525, 529 (2010) (citation omitted).

If a statute is ambiguous, the courts must construe its terms. *Sparks v. Palmetto Hardwood, Inc.,* 406 S.C. 124, 750 S.E.2d 61 (2013). "A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *Id.* at 128, 750 S.E.2d at 63 (citation omitted). "In interpreting a statute, the language of the statute must be read in a sense that harmonizes with its subject matter and accords with its general purpose." *Id.* (citation omitted).

"Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Media Gen.,* 388 S.C. at 148, 694 S.E.2d at 530 (quoting *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "If a statute's 'terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it fairly appears from the context that the Legislature intended to use such terms in a technical or peculiar sense.'" *Id.* (citation omitted).

"What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *Id.* (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03, at 94 (5th ed. 1992)). "Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.* "While it is true that the purpose of an enactment will prevail over the literal import of the statute, this does not mean that this Court can completely rewrite a plain statute." *Hodges,* 341 S.C. at 87, 533 S.E.2d at 582; *cf. Lancaster Cnty. Bar Ass'n v. S.C. Comm'n on Indigent Defense,* 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008) ("In construing a statute, this Court will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the legislature.").

### C. *Majority & Dissenting Opinions of the Court of Appeals*

The majority of the Court of Appeals found the circuit court's interpretation of the "if any" language in section 30-4-80(a) to mean that an agenda was not required for regularly scheduled meetings "is inconsistent with the requirement that agendas be posted twenty-four hours prior to a meeting." *Lambries v. Saluda Cnty. Council*, 398 S.C. 501, 504, 728 S.E.2d 488, 490 (Ct. App. 2012). The majority found such a construction could allow County Council to "circumvent the notice requirement by simply not preparing a formal agenda and then discussing matters on an ad hoc basis at the meeting." *Id.* The majority reasoned "[s]uch conduct would not be in keeping with the purpose of FOIA, [so the court would] not construe a statute in a way that defeats the legislative intent." *Id.*

The majority noted the plain meaning of words in a statute would be rejected if it leads to an absurdity that is not in keeping with the legislative intent, and it found if no agenda is required for regularly scheduled meetings, then the publication requirement for instances when there is an agenda is "superfluous" because "[m]eetings with or without an agenda are equally open to the public." *Id.*

The majority stated, however, that if "agenda" (which is undefined in FOIA) "is not viewed narrowly as only a formally prepared piece of paper but instead as representing the impactful actions and business the paper memorializes, then the statute can be read harmoniously." *Id.* In such case, "the 'if any' language simply recognizes that regularly scheduled meetings of public bodies may occur during which *no formal action or discussion is to take place*. If so, there is no agenda and no requirement for publication of a blank piece of paper." *Id.* (emphasis added).

The majority acknowledged that the remaining issue, whether a published agenda of a regularly scheduled meeting could be amended during a meeting without violating FOIA, was "a close question[] because no provision appears to prohibit such action." *Id.* at 505, 728 S.E.2d at 490. However, the majority ultimately decided allowing an amendment "undercuts the purpose of the notice requirement in section 30-4-80." *Id.* The majority stated, "While Lambries does not argue Council's deeds have been done with ill intent, permitting the amendments to the agenda during a regularly scheduled meeting is a practice that could be abused and *violates the spirit of FOIA*." *Id.* at 505, 728 S.E.2d at 491 (emphasis added). The majority conceded that its "decision may be inconvenient in some instances," *id.* at 506, 728 S.E.2d at 491, and this point has been extensively argued by the amici in their briefs to this Court.

In contrast, the dissenting judge found no FOIA violation by County Council, stating: "Section 30-4-80 is completely silent as to whether an amendment to a published agenda for a regularly scheduled meeting is permitted. What is clear is that an agenda is not required for a regularly scheduled meeting as indicated by the 'if any' language in the statute." *Id.* at 507, 728 S.E.2d at 491-92 (Pieper, J., dissenting). "Because an agenda is not required for a regularly scheduled meeting, it is difficult to conclude that the statute's silence clearly demonstrates legislative intent to prohibit a public body from amending a discretionary agenda." *Id.* at 507, 728 S.E.2d at 492. "Additionally, [County] Council's amendment of the agenda did not violate FOIA's purpose of providing the public access to a public body's actions behind closed doors." *Id.* "[T]he meeting was performed in an open and public manner, and the public was advised of both the meeting and the decisions reached at the meeting." *Id.*

"Moreover, because a FOIA violation can be criminal in nature, the law should be clear as to what is proscribed; otherwise, unintended prosecutions could be threatened." *Id.* "Until the legislature resolves this issue, I would not judicially impose requirements that would have the effect of creating new and potentially unintended criminal liability." *Id.* Lastly, the dissenting judge observed, "[I]n light of the admitted lack of legislative clarity on this issue, I would alternatively affirm the trial court's denial of Lambries' temporary injunction, as the decision to grant or deny an injunction is within the discretion of the trial court." *Id.* at 507-08, 728 S.E.2d at 492.

## D. *Propriety of County Council's Actions*

We find the reasoning of the circuit court and the dissent to be most persuasive. In reviewing FOIA's notice provision, the General Assembly appears to have identified three broad classes of meetings and set forth different notice requirements for each:

**(1) Regularly scheduled meetings.** "All public bodies . . . must give written public notice of their *regular meetings* at the *beginning of each calendar year*. The notice *must* include the *dates, times, and places* of such meetings. Agenda, *if any*, for regularly scheduled meetings must be posted on a bulletin board at the office or meeting place of the public body *at least twenty-four hours* prior to such meetings." S.C. Code Ann. § 30-4-80(a) (emphasis added).

**(2) Called, special, or rescheduled meetings.** "All public bodies must post on such bulletin board public notice for any *called*, *special*, or *rescheduled meetings*. *Such notice* must be posted as early as is practicable but not later than

twenty-four hours before the meeting.  The notice *must* include the *agenda, date, time, and place* of the meeting."  *Id.* (emphasis added).

**(3)  Emergency meetings.**  "*This requirement* [posting a notice including the agenda, date, time, and place not less than twenty-four hours before the meeting as required for called, special, or rescheduled meetings] does *not* apply to *emergency meetings* of public bodies."  *Id.* (emphasis added).

The General Assembly did not specifically define any of the foregoing types of meetings in FOIA.  However, we agree with the circuit court and the dissent that the plain language of the words "if any" can mean only that an agenda is *not* required for regularly scheduled meetings.  To conclude otherwise would be to read the words "if any" completely out of the statute.  In plain terms, written public notice of regularly scheduled meetings must be given at the *beginning* of each calendar year and must include the *dates*, *times*, and *places* of the meetings.  An agenda, *if there is one*, must be posted at least twenty-four hours before the meeting.  Thus, County Council could chose to issue no agenda at all.

To the extent the Court of Appeals found the "if any" language was meant to distinguish two types of regularly scheduled meetings, i.e., (1) those at "which no formal action or discussion is to take place," for which an agenda is not required because "publication of a blank piece of paper" serves no purpose, and (2) those involving action or discussion, which require an agenda, nothing in FOIA supports this reasoning.

To the contrary, FOIA makes it clear that meetings are not limited to instances where action is taken, as evidenced in section 30-4-20(d), which defines a "meeting" as "the convening of a quorum . . . *to discuss or act* upon a matter over which the public body has supervision, control, jurisdiction or advisory power."  S.C. Code Ann. § 30-4-20(d) (2007) (emphasis added); *see also* 62 C.J.S. *Municipal Corporations* § 308 (2011) ("Under an open meetings law, a meeting is a gathering of a quorum or more members of a governing body at which members discuss, decide, or receive information as a group on issues relating to the official business of the body. . . .  A meeting is not limited to gatherings at which action is taken by a governing body.  Deliberative gatherings are included as well, and deliberation in this context connotes not only collective decision-making but also the collective acquisition and exchange of facts in preparation for the final decision." (footnote omitted)).

Moreover, although the specific types of meetings are not defined in FOIA itself, in light of the General Assembly's references to these different meetings in

section 30-4-80(a) and its general references in section 4-9-110 to meeting requirements, we believe the General Assembly made an intentional delineation because the terms do have commonly understood distinctions in the common parlance for procedures governing public bodies.

As other jurisdictions have long recognized, a "regular" meeting is one "convened at a stated time and place pursuant to a general order, statute or resolution." *Barile v. City Comptroller of Utica*, 288 N.Y.S.2d 191, 196 (Sup. Ct. 1968). Since notice is given at the beginning of the year, the public is well apprised of these meetings, which provide an ongoing opportunity for the public body to consider and act upon routine matters that arise throughout the year.

In contrast, a "special" meeting is a meeting called for a special purpose and at which nothing can be done beyond the objects specified for the call. *Id.; see also Stoddard v. Dist. Sch. Bd. for Sch. Dist. 91*, 12 P.2d 309, 312 (Or. 1932) ("A meeting called for a special purpose is a special meeting. A regular meeting is one not specially called, but one convened at a stated time and place pursuant to a general order, statute, or resolution."); 4 Eugene McQuillin, *The Law of Municipal Corporations* § 13:17 (3d ed. rev. vol. 2011) (stating regular meetings are provided for by ordinance, resolution, or motion under legal authority, while special or called meetings are convened by the chief executive officer or presiding officer of the body, or in some other definite way, upon due notice); 39B *Words and Phrases* (2006 & Supp. 2013) (citing authorities defining "special meeting" and distinguishing it from a regular meeting).

In South Carolina, statutory law governing county governments requires councils to hold at least one meeting each month in accordance with a schedule prescribed by the council, and special meetings may be called by the chairman or a majority of the members after twenty-four hours' notice. S.C. Code Ann. § 4-9-110 (1986). A council must conduct its meetings in accordance with the general state law affecting the meetings of public bodies, but it is entitled "to determine its own rules and order of business." *Id.* This statute supports the premise that there is a distinction between regularly scheduled meetings and other meetings. Since the permissible topics for a special meeting are restricted to the "objects of the call," it is reasonable to infer that our General Assembly has purposefully chosen to mandate that an agenda be prepared for this type of meeting, as compared to a regularly scheduled meeting. The consideration of the limited subject matter necessarily dictates different notice requirements.

By mandating an agenda for regularly scheduled meetings and forbidding County Council from amending its agenda, the Court of Appeals is, effectively, treating a regularly scheduled meeting as a called, special, or rescheduled meeting. As County Council asserts, "[t]he majority's decision expands the scope of [] FOIA and imposes a new agenda requirement and a new prohibition against amendment of published agenda not contained in [] FOIA itself." It has long been the law of this state that where a statute's plain language is clear, a court is not allowed to change its meaning, and a court cannot speculate on legislative intention because to do so would be an assumption of legislative power. *State v. Lewis*, 141 S.C. 207, 139 S.E. 386 (1927); *see also Hodges*, 341 S.C. at 85, 533 S.E.2d at 581 ("Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute.").

In sum, nowhere in FOIA is there a statement that an agenda is required for regularly scheduled meetings. Since what the General Assembly says in the text of the statute itself is the best evidence of legislative intent, *Hodges,* 341 S.C. at 85, 533 S.E.2d at 581, we believe the legislative intent evidenced in the use of the phrase "if any" is that the issuance of an agenda for regularly scheduled meetings lies within the discretion of County Council. *Cf.* 62 C.J.S. *Municipal Corporations* § 148 (2011) ("The functions of a municipal corporation may be either imperative or discretionary. Whether any particular power or duty is mandatory, permissive, or discretionary is purely a question of legislative intent." (footnote omitted)).

If the General Assembly wanted to require an agenda for regularly scheduled meetings, it could have done so with the simple use of the word "shall," which generally signals a command. *Cf. City of Midwest City v. House of Realty, Inc.*, 198 P.3d 886, 891 n.6 (Okla. 2008) ("All public bodies shall give notice in writing by December 15 of each calendar year of the schedule showing the date, time and place of the regularly scheduled meetings of such public bodies for the following calendar year. . . . In addition . . . , all public bodies shall, at least twenty-four (24) hours prior to such meetings, display public notice of said meeting, setting forth thereon the date, time, place and agenda for said meeting . . . ; provided, however, the posting of an agenda shall not preclude a public body from considering at its regularly scheduled meeting any new business." (quoting Okla. Stat. tit. 25, § 311 (2001)); *cf. Grapski v. City of Alachua*, 31 So. 3d 193, 199 (Fla. Dist. Ct. App. 2010) (holding while Florida courts have recognized that notice of public meetings is mandatory, the preparation of an agenda that reflects every issue that may come up at a properly noticed meeting is not, and notice need not be given of every potential deviation from a previously announced agenda; the public has the right to

attend open meetings, but no authority to interfere with the decision-making process.)

Nor is there any restriction contained in FOIA on the amendment of an agenda. We agree with the dissent that it appears the majority of the Court of Appeals engrafted this prohibition onto FOIA based on its subjective view of the "spirit" and "purpose" of FOIA. Although we understand the concerns articulated by the majority, the purpose of the notice provision in section 30-4-80 is to prevent government business from taking place in secret, as noted in our case law, *e.g.,* *Wiedemann v. Town of Hilton Head Island*, 330 S.C. 532, 500 S.E.2d 783 (1998), and in the General Assembly's statement of purpose in section 30-4-15. The public was not prevented from finding out the actions of County Council where the proposed amendment to the agenda and the resolution were both raised and voted upon in public and were recorded in the minutes of the meeting of County Council. Since County Council posted the regularly scheduled meeting at the beginning of the year and posted a discretionary agenda at least twenty-four hours prior to the meeting, it complied with the requirements of FOIA's notice requirement in section 30-4-80. *Cf. Dorsten v. Port of Skagit County*, 650 P.2d 220, 223 (Wash. Ct. App. 1982) ("The primary requirement for regularly scheduled meetings is that they be 'open to the public.' Notice of the agenda is required only for special meetings. RCW 42.30.080.").

Some jurisdictions have provisions in their open meetings laws that specifically address when and how amendments may be made. *E.g., Zoning Bd. of Appeals v. Freedom of Info. Comm'n*, 784 A.2d 383, 385 n.3 (Conn. App. Ct. 2001) ("The agenda of the regular meetings of every public agency . . . shall be available to the public and shall be filed, not less than twenty-four hours before the meetings to which they refer . . . . Upon the affirmative vote of two-thirds of the members of a public agency present and voting, any subsequent business not included in such filed agendas may be considered and acted upon at such meetings . . . ." (quoting Connecticut's General Statutes, revision to 1997, § 1-21(a), recodified at § 1-225(c)); *see also* 29 Del. Code Ann. tit. 29, § 10004(e)(2) (Supp. 2012) ("All public bodies shall give public notice of their regular meetings and of their intent to hold an executive session closed to the public, at least 7 days in advance thereof. The notice shall include the agenda, if such has been determined at the time, and the dates, times and places of such meetings . . . ; however, the agenda shall be subject to change to include additional items . . . or the deletion of items . . . which arise at the time of the public body's meeting.").

In the absence of such a legislative directive here, we decline to judicially impose a restriction on the amendment of an agenda for a regularly scheduled meeting, especially when it is clear that no agenda is required at all.  We find this is also the better public policy in light of the fact that a violation of FOIA can carry a criminal penalty, and we note this Court has previously declined to impose restrictions that are not expressly provided by the General Assembly in FOIA.  *See, e.g. Wiedemann*, 330 S.C. at 535 n.4, 500 S.E.2d at 785 n.4 (stating "[t]here is no requirement, in section 30-4-60 or elsewhere in [] FOIA, that meetings of a public body be conducted in a **public** building" and holding "[a]bsent a specific statutory restriction, [] meetings may be held in locations other than public buildings"); *Herald Publ'g Co. v. Barnwell*, 291 S.C. 4, 11, 351 S.E.2d 878, 882 (Ct. App. 1986) (citing section 30-4-80(a) and stating FOIA "requires that public bodies post a public notice of any special meeting including the agenda, date, time and place of the meeting," but finding FOIA "does not require that an agenda for an executive session be posted or that the news media be notified of the agenda of an executive session").

## IV.  CONCLUSION

We conclude FOIA's notice statute does not require an agenda to be issued for a regularly scheduled meeting, and FOIA contains no prohibition on the amendment of an agenda for a regularly scheduled meeting.  Thus, we hold County Council did not violate FOIA in this instance.  The imposition of any additional restrictions in FOIA is a matter for the General Assembly.

**REVERSED.**

**TOAL, C.J., KITTREDGE and HEARN, JJ., concur. PLEICONES, J., concurring in result only.**