**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Shane Gould, Respondent,

v.

Worldwide Apparel LLC, f/k/a MusclePharm Sportswear LLC, and Drew Ciccarelli, Appellants.

Appellate Case No. 2016-002469

———————————

Appeal From Charleston County
Benjamin H. Culbertson, Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-262
Heard April 1, 2019 – Filed July 17, 2019

———————————

**REVERSED AND REMANDED**

———————————

Desa Ballard and Harvey M. Watson, III, both of Ballard & Watson, of West Columbia, and Theodore Harry Huge, of Charleston, and William Stephen Harris, of Johns Island, both of Harris & Huge, LLC, for Appellants.

John E. Schmidt, III and Melissa Javon Copeland, of Schmidt & Copeland, LLC, of Columbia, for Respondent.

———————————

**PER CURIAM:** In this action under the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to -110 (Supp. 2018), Appellants, Worldwide Apparel, LLC and Drew Ciccarelli, challenge an order granting summary judgment to Respondent Shane Gould. Appellants argue summary judgment was improper because genuine issues of material fact existed as to the operative terms of employment. We agree and, therefore, reverse and remand.

This court reviews the grant of a summary judgment motion under the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). Rule 56(c), SCRCP, provides that summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Further, "[w]hen a circuit court grants summary judgment on a question of law, this [c]ourt will review the ruling de novo." *Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212, 826 S.E.2d 285, 290 (2019).

"In determining whether any triable issues of fact exist, the evidence and all inferences [that] can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009). "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 362, 563 S.E.2d 331, 333 (2002). "On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below." *Id.*

Further, "in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock*, 381 S.C. at 330, 673 S.E.2d at 803; *see also Radcliffe v. S. Aviation Sch.*, 209 S.C. 411, 420, 40 S.E.2d 626, 630 (1946) ("A scintilla of evidence is *any material* evidence that, if true, would

tend to establish the issue in the mind of a reasonable jury." (quoting *In re Crawford*, 205 S.C. 72, 30 S.E.2d 841, 849 (1944))); *Bethea v. Floyd*, 177 S.C. 521, 181 S.E. 721, 724 (1935) (defining "scintilla" as the smallest trace). "At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." *S.C. Prop. & Cas. Guar. Ass'n v. Yensen*, 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct. App. 2001). Moreover, "[s]ummary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Id.*

Here, Appellants assert deposition testimony and copies of text messages between Gould and Ciccarelli show that the imminent sale of MusclePharm Sportswear greatly reduced the amount of time Appellants needed Gould's assistance and, thus, Ciccarelli and Gould agreed on reduced hours and compensation. Appellants argue these material issues of fact precluded summary judgment. On the other hand, Gould asserts that the attempted changes in his working hours and compensation were void because they were not in writing, as required by the Payment of Wages Act (the Act), and also constituted an illegal agreement purporting to contravene the Act's provisions. Therefore, Gould argues, he is entitled to judgment as a matter of law.

The Act's purpose is "to protect employees from the unjustified and wilful retention of wages by the employer." *Rice v. Multimedia, Inc.*, 318 S.C. 95, 98, 456 S.E.2d 381, 383 (1995). Yet, the Act "does not prohibit an employer from asserting valid defenses or disputing payment in good faith." *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 605, 518 S.E.2d 591, 594 (1999). The provision on which the outcome of the present case hinges is section 41-10-30(A) of the South Carolina Code (Supp. 2018), which states,

> Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages *agreed upon*,[1] the time and place of payment, and the deductions [that] will be made from the wages, including payments to insurance programs. The employer has the option of giving written notification by posting the terms conspicuously at or near the place of work. *Any changes in these terms must be made in writing at least seven*

[1] Both Ciccarelli and Gould testified that their agreement for Gould to be paid $10,000 per month was not in writing. Gould stated that he did not want a written agreement at that time.

> *calendar days before they become effective.*  This section
> does not apply to wage increases.

(emphases added).  Section 41-10-30 "is a notice statute.  It is intended to provide the employee with the information requisite to make an educated decision whether or not to accept employment."  *Carolina All. for Fair Emp't v. S.C. Dep't of Labor, Licensing, & Regulation*, 337 S.C. 476, 491, 523 S.E.2d 795, 803 (Ct. App. 1999).

Gould contends the language of section 41-10-30(A), i.e., "[a]ny changes in these terms must be made in writing at least seven calendar days before they become effective," is self-enforcing.  Gould argues the Act "provides that any downward change in the rate of pay of an employee is not effective without seven days' advance written notice."  Gould does not cite any case law to support this assertion.

Appellants counter that the use of the word "effective" in section 41-10-30(A) is "merely used as a timing mechanism for the giving of written notice, not a potential nullification of an act."  In other words, the use of the words "they become effective" merely provides the temporal starting point for determining the date on which the employer must provide notice to the employee.  Appellants also argue that the exchange of text messages met the writing requirement of section 41-10-30(A) and, even if these messages did not satisfy the writing requirement, the Act's only penalty for violating the writing requirement is set forth in S.C. Code Ann. § 41-10-80(A) (Supp. 2018), which states,

> Any employer who violates the provisions of Section 41-10-30 must be given a written warning by the Director of the Department of Labor, Licensing, and Regulation or his designee for the first offense and must be assessed a civil penalty of not more than one hundred dollars for each subsequent offense.

"The cardinal rule of statutory construction is that we are to ascertain and effectuate the actual intent of the legislature."  *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989).  "In interpreting a statute, the court will give words their plain and ordinary meaning[] and will not resort to forced construction that would limit or expand the statute."  *State v. Johnson*, 396 S.C. 182, 188, 720 S.E.2d 516, 520 (Ct. App. 2011).  "Thus if the words are unambiguous, [the court] must apply their literal meaning."  *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011).

Under the plain meaning rule, it is not the province of the court to change the meaning of a clear and unambiguous statute. Where the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning.

*S.C. Energy Users Comm. v. S.C. Pub. Serv. Comm'n*, 388 S.C. 486, 491, 697 S.E.2d 587, 590 (2010) (citation omitted). Further, "[t]he intention of the legislature must be gleaned from the entire section and not simply clauses taken out of context." *Singletary v. S.C. Dep't of Educ.*, 316 S.C. 153, 162, 447 S.E.2d 231, 236 (Ct. App. 1994).

Moreover, a statute "must be read as a whole and sections [that] are part of the same general statutory law must be construed together and each one given effect." *CFRE,* 395 S.C. at 74, 716 S.E.2d at 881 (quoting *S.C. State Ports Auth. v. Jasper Cty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)). "[The court] therefore should not concentrate on isolated phrases within the statute." *Id.* "Instead, [the court reads] the statute as a whole and in a manner consonant and in harmony with its purpose." *Id.* "In that vein, [the court] must read the statute so 'that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous,' for '[t]he General Assembly obviously intended [the statute] to have some efficacy, or the legislature would not have enacted it into law.'" *Id.* (citation omitted) (alterations in original) (quoting *State v. Sweat*, 379 S.C. 367, 377, 382, 665 S.E.2d 645, 651, 654 (Ct. App. 2008)).

Under the plain meaning rule, Gould's interpretation of section 41-10-30(A) cannot stand because it would require adding the word "may" (or "will") to the language "[a]ny changes in these terms must be made in writing at least seven calendar days before they become effective" to read, "[a]ny changes in these terms must be made in writing at least seven calendar days before they *may/will* become effective." *See Johnson*, 396 S.C. at 188, 720 S.E.2d at 520 ("In interpreting a statute, the court will give words their plain and ordinary meaning[] and will not resort to forced construction that would limit *or expand* the statute." (emphasis added)).

Further, if the legislature had intended to impose any consequences for violation of section 41-10-30 in addition to those imposed by section 41-10-80, it would have expressly provided for them, and there is no provision in the Act other than section 41-10-80 addressing the failure of an employer to comply with the

writing requirement of section 41-10-30(A). *See id.* ("In interpreting a statute, the court will give words their plain and ordinary meaning[] and will not resort to forced construction that would limit *or expand* the statute." (emphasis added)); *CFRE*, 395 S.C. at 74, 716 S.E.2d at 881 (2011) (holding that a statute "must be read as a whole and sections [that] are part of the same general statutory law must be construed together and each one given effect" (quoting *S.C. State Ports Auth.*, 368 S.C. at 398, 629 S.E.2d at 629)); *id.* ("We therefore should not concentrate on isolated phrases within the statute."); *id.* ("Instead, we read the statute as a whole and in a manner consonant and in harmony with its purpose.").

Even if both Gould's and Appellants' respective interpretations of section 41-10-30(A) could be viewed as reasonable, the perceived ambiguity would be resolved by the canon "*expressio unius est exclusio alterius*" or "*inclusio unius est exclusio alterius*," which means "to express or include one thing implies the exclusion of another, or of the alternative." *State v. Leopard*, 349 S.C. 467, 472–73, 563 S.E.2d 342, 345 (Ct. App. 2002) (quoting *S.C. Dep't of Consumer Affairs v. Rent-A-Center, Inc.*, 345 S.C. 251, 256, 547 S.E.2d 881, 883–84 (Ct. App. 2001)); *see also Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 117, 580 S.E.2d 100, 109 (2003) ("We may apply . . . rules of statutory construction when the meaning of the act is ambiguous."). This canon supports our conviction that the only consequences the legislature intended to impose for violating the writing requirement of section 41-10-30(A) are those specifically set forth in section 41-10-80. There is simply no indication that the legislature intended to void an oral novation of an oral employment contract.

Gould also maintains that because the Act prohibits any agreement attempting to set aside the Act's protections for workers, his lawful salary was "at no time . . . anything other than the undisputed originally agreed $10,000 per month." *See* S.C. Code Ann. § 41-10-100 (Supp. 2018) ("No provision of this chapter may be contravened or set aside by a private agreement."). This logic is strained.

First, the original oral contract for $10,000 per month also violated the writing requirement. Further, the plain language of section 41-10-100 contemplates an employee's agreement to waive a protection provided by the Act. *See Ross v. Ligand Pharm., Inc.*, 371 S.C. 464, 473 n.1, 639 S.E.2d 460, 465 n.1 (Ct. App. 2006) (discussing section 41-10-100 and stating that South Carolina courts "refuse to allow employers to ignore the [Act] by claiming their employees had by contract or custom waived their statutory right to prompt payment of wages." (quoting *Futch*, 335 S.C. at 605, 518 S.E.2d at 594)). Appellants' agreement with Gould for his reduced workload and compensation did not address the writing requirement of section 41-

10-30, much less seek Gould's waiver of that requirement. *Cf. Ross*, 371 S.C. at 473 n.1, 639 S.E.2d at 465 n.1 (holding that an incentive plan providing for estimated payment dates rather than dates certain "sought to set aside the requirement of the Act that Employers must provide a 'time and place of payment' to employees").

In any event, the contents of the text messages exchanged between Gould and Ciccarelli were sufficient to satisfy the writing requirement. The Act does not place limits on the nature of the writing or provide a specific definition for the term "writing." Therefore, we may rely on case law recognizing electronic forms of communication as a writing. *Cf. Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 308–09, 698 S.E.2d 773, 777–78 (2010) (recognizing the language in electronic mail sent to an employee created a contract for a two-year term of employment); *e.g., Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 577 (D. Md. 2007) (stating that the definition of "writings, recordings and photographs" in Rule 1001, FRE, includes evidence that is electronically generated and stored); *State v. Legassie*, 171 A.3d 589, 598 n.8 (Me. 2017) (observing that a majority of state and federal courts applying the best evidence rule have concluded that electronically-transmitted communications such as emails or text messages constitute writings); *Dalton v. Commonwealth*, 769 S.E.2d 698, 704 (Va. Ct. App. 2015) ("[T]ext messages constitute writings for the purposes of the best evidence rule."); *State v. Espiritu*, 176 P.3d 885, 892 (Haw. 2008) (holding that a text message qualifies as a writing as defined in Hawaii's rules of evidence "because it consists of letters, words, or numbers set down by mechanical or electronic recording, or other form of data compilation").

Based on the foregoing, the writing requirement of section 41-10-30 is an improper basis on which to preclude a jury from resolving the issues concerning the existence and terms of a novation between the parties. *See* Rule 56(c), SCRCP (allowing summary judgment only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); *U.S. Bank Tr. Nat'l Ass'n v. Bell*, 385 S.C. 364, 374, 684 S.E.2d 199, 204–05 (Ct. App. 2009) ("When interpreting an oral contract, a court must give effect to the intentions of the parties. The determination of the parties' intent is a question of fact." (citations omitted)); 17B C.J.S. *Contracts* § 1012 (2019) (explaining that the question of the existence of an oral contract is generally one of fact, unless the evidence is undisputed and incapable of supporting more than one inference).

Further, the text messages and the related deposition testimony constitute more than a scintilla of evidence of the parties' intent to adjust Gould's compensation and phase out his employment. Because these factual issues are material to the issue

of the amount of wages Appellants owed to Gould when Gould filed his complaint, they should be presented to a jury for resolution.  *See* Rule 56(c), SCRCP (allowing summary judgment only when "there is *no* genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (emphasis added)); *Hancock*, 381 S.C. at 330, 673 S.E.2d at 803 ("[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment."); *Yensen*, 345 S.C. at 518, 548 S.E.2d at 883 ("Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law.").  Therefore, the circuit court erred by granting summary judgment to Gould.

## CONCLUSION

Based on the foregoing, we reverse the circuit court's order granting summary judgment to Gould and remand for further proceedings.  In light of this disposition, we need not address Appellants' remaining issues.  *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (providing that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

**REVERSED AND REMANDED.**

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**